JONES VS. AUSTIN.

Where the matter in issue arises out of the sale of an improvement upon the public land, there is not such question or controversy in respect to the title to land, as would, under the decision in *Fitzgerald et al. vs. Beebe,* 2 *Eng. Rep.* 308, exclude the jurisdiction of a justice of the peace, where the sum in controversy is less than one hundred dollars.

Where the verdict is not entirely without evidence to support it, and the evidence is applicable to the instructions, which are not contrary to the law, the verdict and judgment thereon will be sustained.

Where a contract is obtained from a party, who is unable to read or write, by fraud, the jury may disregard it.

To procure the execution of an instrument of writing by a party, who is unable to read or write, without his knowing its contents, or when he believed its contents were different from what they, on account of the fraudulent representations of others, really were, is such a fraud as would avoid the instrument.

*Appeal from Drew Circuit Court.*

Hon. THEODORIC F. SORRELS, Circuit Judge.

CUMMINS, for appellant.

HARRISON, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Fountain C. Austin sued Willis Jones, before a justice of the peace of Drew county, on a note for $100, executed by Jones to Austin, on the 5th of January, 1854, and due the first of January, 1855. Judgment in favor of the plaintiff before the justice, and appeal to the Circuit Court of said county by defendant.

In the Circuit Court, the cause was submitted to a jury, Jones relying, it seems, upon the defence of failure of consideration.

After Austin had read in evidence the note sued on, and closed, Jones introduced the following instrument, proving by one of the subscribing witnesses, that Austin made his mark thereto, &c.

"DREW COUNTY, ARKANSAS.

*Know all men by these presents*, That I, F. C. Austin, *has bargain an sold* to Willis Jones, all the improvements on the *north half of section nine, and south half section four*, for the sum of five hundred dollars, four hundred dollars to be paid at March court, one hundred to be paid the first day of January, 1855. I furthermore bind myself to give to the said Jones possession this day, January, 5th, 1854.

his<br>
F. C. ⋈ AUSTIN."<br>
mark

O'Neill, one of the subscribing witnesses to the above instrument, testified that he was one of the arbitrators selected by Austin and Jones to settle a controversy between them in regard to an improvement; and his recollection of the final agreement between the parties (to carry which into effect, Jones gave the note sued on and another for $400, and Austin gave the above instrument) was, that Austin had sold to Jones all his (Austin's) improvements on the two half sections of land named in the instrument, and no other improvements or claims. Witness did not read the

instrument at the time, or before Austin signed it, but explained to him what the agreement was, as settled by the arbitrators, and which was as above stated, as witness understood it. Austin could neither read nor write. Witness was under the impression that the instrument was not read to Austin, but was signed by him after witness explained the agreement to him. Witness thought the instrument read, as he understood the agreement, and did not suppose it included the improvements of *Gaddie*, or any one else, on the lands. Witness had attended to the matter throughout, and made the compromise for Austin in his absence. He supposed Austin was only selling his own improvements on the lands. Nothing was said of the improvements of other persons being on the lands. Jones said he wanted the instrument, which was written by himself, to show to his neighbors and father-in-law in Mississippi, to remove a false impression which had got abroad, that he had entered the improvement of Austin, and refused to pay him for it: he gave no other reason for wanting it. Witness did not know whether Jones knew that *Gaddie* and *Ethridge* had improvements on said lands or not. He had lived there for some time before that, and ought to have known that their improvements were partly on the lands. The object of the instrument being given was not to operate as a conveyance, but to be used by Jones to clear his character. When it was presented to Austin, he objected to signing it, because he could not give a deed for public land. Witness explained it to him, telling him it was not a contract to convey the lands, nor his improvements thereon, but to show that Jones had paid him for his improvements, and to vindicate Jones' character. Jones read the instrument to witness, and *Dear*, the other subscribing witness, but not to Austin. Witness did not recollect anything of the word "*all*" occurring in it: or "*all* the improvements:" for, if he had noticed it, he would have objected to it. Jones was, at the time, living on the Gaddie improvement. Possession was delivered to him of Austin's improvement within an hour or two after the instrument was given, and he expressed himself satisfied.

*Halley* testified, that about the time Jones and Austin were making the trade about the improvement on the two half sections named in the above instrument, he went round with them as they run the lines of the land. The line included some ten acres of the improvement of Gaddie. When they came to this part of the line, witness asked Austin if he claimed all the land in that half section included by the line? He said he did; that he bought it from Evans, and intended to have it. Witness asked him if he did not intend to pay Gaddie for it? He said he would; or clear as much land on Gaddie's tract for him. The improvement of Gaddie, included within the line, was worth about $40. The improvement of Ethridge, included within said half sections, consisted of six or eight acres, and was worth $20 or $30. Austin claimed all the improvements on the two half sections. Witness was also present when the above instrument was executed. The arbitrators were in one room, and witness and Austin in an adjoining one. When the arbitrators seemed to have agreed, they sent for Austin, who went in to them, and witness distinctly heard O'Neill's voice, he thought, stating what the agreement was: that Austin was to sell Jones all the improvements on said two half sections. Witness did not, at the time, hear the instrument read, or see it, but a few days afterwards he called on Jones and asked him to show it to him, which he did; and it then read as it now does in every respect. His reason for asking to see the instrument was, that it was reported in the neighborhood that Austin had undertaken to sell part of the improvements of Gaddie and Ethridge.

*Wood* testified, that he was one of the arbitrators to settle the controversy between Austin and Jones. That on the day or night before the notes and agreement were given, when the arbitrators were considering the subject, Jones finally said he would give Austin $500 for the improvements, if Austin would give him a writing that he had sold him all the improvements on the two half sections named in the agreement. The arbitrators said it should be done next day. Next day, Austin was informed of

this. Witness was present when the instrument was explained to Austin before he signed it, and it was explained as he had above stated the contract to be.

*Gaddie* testified, that he had an improvement, eight or ten acres of which, cleared and fenced, were within the north half of section nine, referred to in the agreement. That before the agreement was made, Jones had rented from him his entire improvement for so much per acre, and lived at his house, and on his improvement (part of which extended into the north half of section nine, as aforesaid,) at the time said agreement was executed. He afterwards arranged the rent as to all said improvements, except that part extending on to the north half of section nine, which he refused to pay for. Witness still claimed the improvement made by him, and would insist on pay for it from some one.

*Holland* testified, that he was along when Jones and Austin ran the lines of said lands, and Austin claimed all the land on the north half of section nine. It was asked at the time by Jones or Austin, how far Gaddie's claim would extend on the north half of section nine, and witness showed them by reference to a tree top.

*Ethridge* testified, that he had made an improvement, some six or eight acres of which lay on the north half of said section nine. He still claimed said improvement, and would insist on payment therefor. Jones had not, as far as witness knew, been in possession of that part lying in section nine.

The above being all the evidence offered or introduced by the parties, Jones moved the court to dismiss the case for want of jurisdiction in the justice of the peace, and in the Circuit Court on the appeal, of the subject matter of the suit, because it appeared from the evidence, that titles to real estate were involved, &c. The court overruled the motion.

The court charged the jury: 1. That the contract of Austin, read in evidence, was *prima facie* evidence, and *prima facie* valid; but, if they believed from the evidence, that said instru-

ment was obtained from Austin by fraud, then they might wholly disregard the same.

2. If the jury find from the evidence, that the signature of Austin was procured to said instrument, without his knowing its contents, or when he believed its contents were different from what they, on account of the fraudulent representations of others, really were, this would be such fraud as to avoid the instrument, and in that case, the jury have a right to disregard said instrument.

3. If the jury, however, find said instrument executed by Austin was valid, and further that one or more, or part of one or more of the improvements on the lands in said contract mentioned, never belonged to Austin, and Jones never got them, then, they should deduct from the note sued on, the value of such improvement as Jones was thus deprived of.

4. If they found said contract to be fraudulent and void, they might find the amount of note and interest for Austin."

The jury returned a verdict in favor of Austin, for the amount of the note sued on, and interest, and judgment was rendered accordingly.

Jones moved for a new trial, on the ground, that the verdict was contrary to law, evidence, and the instructions of the court: that the court erred in its instructions to the jury, and in not dismissing the case for want of jurisdiction. The court overruled the motion, Jones excepted, and appealed to this court.

1. The counsel for the appellant insists that the court below should have dismissed the case for want of jurisdiction, on the authority of *Fitzgerald et al. vs. Beebe*, 2 *Eng. Rep.* 308, where it was held that justices of the peace have no power to entertain an action for use and occupation, where the title of the plaintiff may be disputed, and drawn into question and controversy by the occupant: in other words, that they have no jurisdiction "of any action where the title to any lands shall come in question." *Digest*, *chap.* 95, *part* 2, *sec.* 5, *p.* 641.

The case before us, is not like the one cited. Here, neither

the instrument read in evidence by Jones, nor the parol testimony introduced by the parties, conduced to show that Austin had contracted to sell or convey to Jones, any title to the lands, not even a pre-emption, but merely improvements upon what we suppose, from the testimony, to have been public lands. The main point in controversy, seems to have been, as to whether Austin sold his own improvement only, or such portions of the improvements of Gaddie and Ethridge also, as extended over upon the tract of land on which Austin's improvement was situated.

The note sued on did not exceed $100, and was within the jurisdiction of the justice, and we find nothing in the testimony upon which the court below could have held that the jurisdiction was defeated.

2. The verdict is not entirely without evidence to sustain it: nor were the first and second instructions given by the court to the jury, which are the only ones complained of here, altogether abstract, as contended by the counsel for the appellant. There were portions of O'Neill's testimony, to which they were, to some extent, applicable. No other objection is made to them.

The parol testimony in explanation of the written contract read in evidence, took a tolerably latitudinous range, but neither party seems to have objected to it.

Upon the whole record, no error has been pointed out for which we think the judgment should be reversed, and it is affirmed.